IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-115

Filed 17 October 2023

Wake County, No. 19CRS223407

STATE OF NORTH CAROLINA

v.

ANDRE EUGENE LESTER

Appeal by defendant from judgment entered 21 July 2022 by Judge Thomas H. Lock in Wake County Superior Court. Heard in the Court of Appeals 20 September 2023.

*Attorney General Joshua H. Stein, by Deputy General Counsel Tiffany Y. Lucas, and General Counsel Fellow Zachary R. Kaplan, for the State.*

*Mark L. Hayes, for the defendant-appellant.*

TYSON, Judge.

Andre Eugene Lester ("Defendant") appeals from judgments entered upon a jury's verdicts of guilty of statutory rape of a child, statutory sex offense with a child, and indecent liberties with a child. The State has failed to show the Constitutional error was harmless beyond a reasonable doubt. Defendant is entitled to a new trial.

## I. Background

Thirteen-year-old Riley lived in an apartment in Cary with her father and her fifteen-year-old brother. (Per N.C. R. App. P. 42(b) a pseudonym is used to protect

the identity of minors). Riley's father worked during the day and left his children at home alone after school. Riley's mental health diagnoses included major depressive disorder without psychosis, which had previously required "several inpatient psychiatric hospitalizations." Riley also exhibited signs of cutting herself.

Riley's father took her to a Duke Hospital Clinic ("Duke") in the summer of 2019. Riley met with social worker Kristen Russell ("Russell"). Russell inquired of Riley about her sexual health and experiences. Riley asserted she had previous sexual experiences with a man around thirty years old. Riley told Russell she did not believe this experience was wrong and did not want to tell an adult. Duke is a mandatory reporter of alleged sexual assaults and reported her allegations to Riley's father and law enforcement officers. Riley was referred to and interviewed at the SAFEchild Advocacy Center.

Cary Police Corporal Armando Bake received Russell's report on 12 September 2019 at the Juvenile Crimes Unit. Corporal Bake spoke with Riley, her father, and her brother. Riley's brother identified the alleged perpetrator as "Ray-Ray," and he told Corporal Bake that "Ray-Ray" was currently in jail for an alleged robbery.

Riley told Corporal Bake she and "Ray-Ray" had communicated *via* text messages and cellular phone calls. Riley also gave Corporal Bake her and "Ray-Ray's" cell phone numbers. Corporal Bake contacted Cary Police Detective Jim Young, who was investigating the alleged robbery. Detective Young identified "Ray-Ray" as Defendant and confirmed his date of birth and his cell phone number.

Corporal Bake and Detective John Schneider obtained a court order requesting Defendant's cell phone records from Verizon from May 2019 until July 2019. The officers used PenLink, a computer program, to create a derivative record showing communications between Defendant's and Riley's cellular phones. PenLink derived "over 100 communications . . . between the two phones" within the May to July 2019 time period.

Riley testified she and her brother used their apartment as a "crack house," bringing people over for "drugs and sex," while their father was away working. Riley initially met then thirty-two-year-old Defendant at a hotel with her brother. Riley later encountered Defendant outside while walking her dog near the family's apartment during the summer of 2019. After some "small talk," Defendant told Riley that he was waiting to meet her brother. Riley "offered to let [Defendant] wait in the house because it was hot outside."

Riley and Defendant talked, which "led to [Riley] doing a tarot card reading" for Defendant. Riley pulled out a tarot card which "had a naked lady on it," which steered the conversation towards the topic of sex. Riley produced and showed Defendant her "pleasure toys." Riley asked Defendant if he wanted to have sex. Defendant agreed and the two went into Riley's brother's bedroom.

Once inside the bedroom, Defendant and Riley removed their pants. Riley began performing oral sex on Defendant. Defendant noticed Riley "was struggling" with oral sex. Riley "got on the bed" and Defendant "told [Riley] what position to get

in." Riley testified she got onto her hands and knees on the bed, Defendant positioned himself behind her, and he inserted his penis inside her vagina. Defendant also grabbed Riley's breasts. Riley's vagina hurt and she screamed from the pain. Defendant continued penetrating Riley's vagina.

After Defendant removed his penis from Riley's vagina, Riley began performing oral sex on Defendant again. While Riley engaged in oral sex, Defendant began "thrusting with his hips" and Riley reported she "felt like [she] was choking" but did not tell him to stop "because [she] felt bad." Defendant removed his penis from Riley's mouth and masturbated until he ejaculated onto the floor. Defendant and Riley got dressed. Defendant asked Riley if they were "dating," kissed Riley on the mouth, and left the apartment.

Riley told her brother what had happened when he arrived home a short time later. Riley did not tell her father or any adult until her visit at Duke because she was "scared." Defendant received Riley's cell phone number from her brother and began to communicate with her.

Defendant was indicted for statutory rape of a person fifteen years or younger, statutory sexual offense with a child fifteen years or younger, and indecent liberties with a child.

During pretrial proceedings on the day trial was scheduled to begin Defendant's attorney stated: "Your honor, the defendant requests that I move to withdraw, so I move to withdraw." Defendant's attorney stated he had been

representing Defendant for several years in multiple different cases. Defendant's attorney asserted this representation had begun cordially, but their relationship had become difficult after Defendant had "refused to talk to him." Defendant's attorney stated he had received all discovery materials and an offer of a plea agreement, which he had forwarded to Defendant. Defendant's attorney stated he was familiar with the case and was fully prepared to try the case.

Defendant stated his counsel had not come to see him much and had once "yelled" at him during a visit. Defendant disagreed with his counsel's trial strategy, specifically his counsel's refusal to challenge the indictment and file a motion for discovery. Defendant acknowledged he had received all materials provided by the State, including the plea agreement offer.

The trial court denied Defendant's motion, trial proceeded, and a jury convicted Defendant of all three charges. The trial court consolidated his convictions for statutory rape of a person fifteen years or younger and statutory sexual offense with a child fifteen years or younger and sentenced Defendant to an active-term sentence of 317 to 441 months imprisonment. Defendant was also sentenced to a consecutive term of 21 to 35 months imprisonment for the indecent liberties with a child conviction, the sentences to run consecutively. Defendant appeals.

## II.  Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2021).

## III.  Issues

Defendant argues the trial court erred by: (1) admitting phone records which were hearsay and violating his rights under the Confrontation Clause, (2) admitting hearsay evidence to link him to a phone number; (3) allowing an in-court identification based on an impermissibly suggestive pretrial procedure; (4) denying his motion to have his attorney withdraw as counsel; and, (5) denying his motion for a new attorney.

## IV.    Confrontation Clause

Defendant asserts the admission of State's Exhibit #2 of Verizon records showing calls made to and from (984)-328-XXXX from 1 May 2019 to 13 July 2019 and State's Exhibit #3 showing calls to Defendant's purported number ending in 1545 and (984)-328-XXXX were inadmissible hearsay, and the admission of those exhibits violated his Sixth Amendment right to confront and cross-examine witnesses and challenge the evidence admitted against him.

### A. Standard of Review

Whether a defendant's right to confrontation has been violated is reviewed *de novo*. *State v. Jackson*, 216 N.C. App. 238, 241, 717 S.E.2d 35, 38 (2011) (citation omitted). "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless [the State proves] . . . it was harmless beyond a reasonable doubt." *State v. Lewis*, 361 N.C. 541, 549, 648 S.E.2d 824, 830 (2007) (citing N.C. Gen. Stat. § 15A-1443(b) (2005)).

"When the State fails to prove the error was harmless beyond a reasonable

doubt, 'the violation is deemed prejudicial[,] and a new trial is required.'" *State v. Glenn*, 220 N.C. App. 23, 25, 725 S.E.2d 58, 61 (2012) (citation omitted).

## B. Analysis

### 1. Sixth Amendment Confrontation Clause

Defendant argues he suffered Constitutional and prejudicial error when the trial court admitted the hearsay cellular phone data records. Hearsay is a "statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2021). Rule 803(24) governs the admission of a hearsay statement, as a catch all, which is not covered by another exception, but the evidence carries sufficient *indicia* of reliability. The admission of hearsay business records is governed by Rule 803(6), a separate and distinct exception. *See* N.C. Gen. Stat. § 8C-1, Rule 803(6) (2021). While Verizon's hearsay records kept in the ordinary course of business may have been qualified and properly admitted as business records, the State merely failed to authenticate them to warrant admission under that specific exception. *Id.*; *State v. Smith*, 315 N.C. 76, 93, 337 S.E.2d 833, 844 (1985).

The Supreme Court of the United States held: "The Sixth Amendment's Confrontation Clause provides that, [i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. We have held that this bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42, 158 L.Ed.2d 177, 187 (2004)

(citations and quotation marks omitted).

The Confrontation Clause within the Sixth Amendment of the Constitution of the United States bars admission of testimonial evidence, unless the declarant is unavailable to testify and the accused had a prior opportunity to cross-examine the declarant." *State v. Locklear*, 363 N.C. 438, 452, 681 S.E.2d 293, 304 (2009). The Confrontation Clause "does not bar admission of an unavailable witness's statement against a criminal defendant if the statement bears adequate indicia of reliability." *Crawford*, 541 U.S. at 42, 158 L.Ed.2d at 187 (quotation marks omitted). To meet that test and be admitted, evidence must either fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of trustworthiness." *Id.*

In the majority's opinion in *Crawford*, Justice Scalia reasoned:

> Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of reliability. . . . Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee.

*Id.* (internal quotation marks omitted).

### 2. *Rule of Evidence 803(6)*

The State initially attempted to admit State's Exhibits #2 and #3 as business records pursuant to Rule 803(6). The trial court, after objection, correctly denied their admission as business records. N.C. Gen. Stat. § 8C-1, Rule 803(6). No official or

agent from Verizon appeared in court to authenticate them, and the cover letter purporting to authenticate the records were not sworn under seal nor notarized, to qualify them as an affidavit. *Id.*

State's Exhibit # 3 was also inadmissible as a business record because Detective Schneider testified the document was made for the purpose of litigation and not produced or retained in the regular course of Verizon's business. *Id.* The trial court then admitted both the challenged documents "under rule 803(6) read in conjunction with Rule 803(24), the so-called catch-all exception."

### 3. *Rule of Evidence 803(24) Catch all*

The residual or "catch all" exception to the rule against the admission of hearsay is codified by N.C. Gen. Stat. § 8C-1, Rule 803(24) (2021).

The residual hearsay exception allows the admission of:

> [a] *statement not specifically covered by any of the foregoing exceptions* but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. *However, a statement may not be admitted under this exception unless the proponent of it gives written notice stating his intention to offer the statement and the particulars of it, including the name and address of the declarant, to the adverse party sufficiently in advance of offering the statement to provide the adverse party with a fair opportunity to prepare to meet the statement.*

N.C. Gen. Stat. § 8C-1, Rule 803(24) (emphasis supplied).

In order for hearsay statements to be admissible under Rule 803(24), the trial

court must also determine and conjunctively find:

> (1) whether proper notice has been given, (2) whether the hearsay is not specifically covered elsewhere, (3) whether the statement is trustworthy, (4) whether the statement is material, (5) whether the statement is more probative on the issue than any other evidence which the proponent can procure through reasonable efforts, *and* (6) whether the interests of justice will be best served by admission.

*State v. Valentine*, 357 N.C. 512, 518, 591 S.E.2d 846, 852 (2003) (citations omitted)

(emphasis supplied).

The trial court also must "make adequate findings of fact and conclusions of

law sufficient to allow a reviewing court to determine whether the trial court [erred]

in making its ruling." *State v. Sargeant*, 365 N.C. 58, 65, 707 S.E.2d 192, 196 (2011)

(citation omitted). "If the trial court either fails to make findings or makes erroneous

findings, we review the record in its entirety to determine whether that record

supports the trial court's conclusion concerning the admissibility of a statement

under a residual hearsay exception." *Id.* (citation omitted).

Here, the trial court made oral findings to support its ruling to admit State's

Exhibit #2:

> The court does not find that it is admissible under the express terms of Rule 801 - - I'm sorry, 803(6). However, the court will accept the document under Rule 803(6) read in conjunction with Rule 803(24), the so-called catch-all exception to the hearsay rule under Rule 803, in that the

> document is not specifically covered by any of the foregoing exceptions under the rule, but does have equivalent circumstantial guarantees of trustworthiness, in that the statement is offered as evidence of a material fact; it is more probative on the point for which it is offered than any other evidence which the proponent could procure through reasonable efforts; and the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.
>
> The court, moreover, does find, and I believe there is no dispute as to this, that the proponent did give written notice stating its intention to offer this statement and the particulars of it, including the name and address of the declarant, to the adverse party sufficiently in advance of offering the statement to provide the adverse party with a fair opportunity to prepare to meet the statement.

When the State sought to introduce their Exhibit #3 at trial, Defendant renewed and objected on the same grounds as previously asserted, and the trial court again overruled Defendant's objection. The State failed to argue before the trial court the residual exception applied to warrant its admission solely on that basis. N.C. Gen. Stat. § 8C-1, Rule 803(24).

Defendant concedes the State provided valid prior notice it intended to introduce the exhibits under the hearsay rule and that the evidence was material. "If the trial judge determines that the statement is covered by one of the other specific exceptions, that exception, not the catchall Rule 803(24), governs; admission pursuant to Rule 803(24) is not necessary[.]" *Smith*, 315 N.C. at 93, 337 S.E.2d at 844. The source and contents of the hearsay phone records under State's Exhibit #2 and #3 are "specifically covered" by the business records exception in Rule 803(6) but

the State failed to properly authenticate to admit under that hearsay exception. *Valentine*, 357 N.C. at 518, 591 S.E.2d at 852; N.C. Gen. Stat. § 8C-1, Rule 803(6).

The record does not show these out-of-court statements bear the required "circumstantial guarantees of trustworthiness." N.C. Gen. Stat. § 8C-1, Rule 803(23). In *Valentine*, our Supreme Court articulated the factors the trial court must consider in evaluating the trustworthiness: "(1) whether the declarant had personal knowledge of the underlying events; (2) whether the declarant is motivated to speak the truth or otherwise; (3) whether the declarant ever recanted the testimony; and (4) the practical availability of the declarant at trial for meaningful cross-examination." *Valentine*, 357 N.C. at 518, 591 S.E.2d at 852-53 (citation omitted).

The letter and Detective Schneider's testimony states the cellular phone data was provided by Verizon at the request of the Cary Police Department. State's Exhibits #2 and #3 are purported to be print outs of data files prepared and sent by Verizon. The only factor, in evaluating the trustworthiness, that points to admission is if the declarant had recanted the testimony. *Id.* The documents were compiled, derived, and presented for the upcoming litigation, and the Exhibits were not compiled nor maintained in the regular course of Verizon's business. No one was present at trial with knowledge or authority to validate or testify to their maintenance, retention, compilation, or authenticity.

The State's Exhibits #2 and #3 are no more probative than other evidence the State could have presented. The State could have presented an affidavit along with

the records or from a billing statement of one of the cell phone accounts. Instead, the State presented a form of an unverified Verizon data file sent in non-certified nor sworn response to a purported Cary Police Department request.

The interests of justice do not support the application of the catch-all provision in Rule 803(24) to allow admission under these facts. In this manner, using the residual exception to supplant the authentication requirement as a business record is specifically foreclosed in subsection (2) of the residual exception in Rule 803(24), which specifies "whether the hearsay is *not specifically covered* by any of the foregoing exceptions" covered elsewhere. N.C. Gen. Stat. § 8C-1, Rule 803(24) (2021) (emphasis supplied).

The admission of the State's Exhibits #2 and #3 did not fall either within a "firmly rooted hearsay exception" or bear "particularized guarantees of trustworthiness" to allow their admission under the Confrontation Clause. *Crawford*, 541 U.S. at 42, 158 L.Ed.2d at 187. The primary purpose of the request and preparation of data records by Verizon was to prepare evidence for Defendant's trial. Exhibits #2 and #3 were offered and admitted as substantive evidence. Exhibits #2 and #3 were testimonial and their admission violated Defendant's rights under the Confrontation Clause.

### 4. *Harmless Error*

The State recognizes the potential error and argues their erroneous admission was "harmless beyond a reasonable doubt." *Lewis*, 361 N.C. at 549, 648 S.E.2d at 830

(citation omitted). Without these records, the State's case relies solely on Riley's allegations and testimony. The phone records were certainly corroborative of the State's case. The jury was left to adjudicate Defendant's guilt solely upon Riley's credibility.

The State has failed to carry its burden to prove the erroneous admission of the hearsay phone records in violation of the Confrontation Clause was "harmless beyond a reasonable doubt." *Id.* (citation omitted). The cellular phone contacts between Defendant and Riley after the alleged assault gave corroboration and credibility to her testimony, where no other physical or corroborative evidence was admitted to support the State's case. The State cannot demonstrate, absent the cellular phone data hearsay or other physical or direct evidence, the jury would have found Riley's allegations as credible to meet its burden to demonstrate the Constitutional error was "harmless beyond a reasonable doubt." *Id.*

## V.  Conclusion

The State failed to carry its burden to demonstrate the error in the admission of the admittedly hearsay cell phone records in State's Exhibits #2 and #3 was "harmless beyond a reasonable doubt." *Id.* We vacate Defendant's convictions for statutory rape of a person fifteen years or younger, statutory sexual offense with a child fifteen years or younger, and indecent liberties with a child, the trial court's judgment entered thereon, and remand for a new trial. In light of our disposition on this issue, we need not address Defendant's remaining arguments. *It is so ordered.*

NEW TRIAL.

Judges COLLINS and WOOD concur.