STATE OF NORTH CAROLINA v. NEIL MATTHEW SARGEANT

No. 355A10

(Filed 11 March 2011)

### 1. Evidence— hearsay—catchall exception—exclusion an abuse of discretion

The trial court in a first-degree murder trial abused its discretion in sustaining the State's objection to defendant's proffer of a witness's hearsay statement pursuant to Rule of Evidence 804(b)(5). The statement, provided in connection with the witness's agreement with the State to testify at the trial of a defendant also charged with the first-degree murder of the present victim, had sufficient guarantees of trustworthiness: the witness had personal knowledge of the underlying events, never recanted his statement, the agreement between the witness and the State appeared designed to ensure the witness's truthfulness, and the State could have called the witness as an adverse witness, subjecting him to meaningful cross-examination.

### 2. Evidence— hearsay—catchall exception—erroneous exclusion prejudicial

The trial court's erroneous exclusion of a witness's hearsay statement in a first-degree murder trial prejudiced defendant where the case hinged on the credibility of the witnesses and the exclusion of the statement deprived the jury of evidence that was relevant and material to its role as finder of fact. The Court of Appeals' decision to remand for a new trial was affirmed.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, —— N.C. App. ——, 696 S.E.2d 786 (2010), ordering a new trial following a judgment imposing a sentence of life imprisonment without parole upon a jury verdict finding defendant guilty of first-degree murder and judgments imposing additional terms of imprisonment for other convictions, all entered by Judge Ronald K. Payne on 24 April 2008 in Superior Court, Watauga County. Heard in the Supreme Court 16 November 2010.

*Roy Cooper, Attorney General, by John G. Barnwell, Assistant Attorney General, for the State-appellant.*

*Staples S. Hughes, Appellate Defender, by Benjamin Dowling-Sendor, Assistant Appellate Defender, for defendant-appellee.*

EDMUNDS, Justice.

In this case, we consider whether the trial court correctly excluded the hearsay statement made by one of the participants in a murder. The excluded statement implicated the State's only eyewitness, not defendant, as the instigator of the crime. Because we find that the trial court's findings of fact are not based upon competent evidence and that the record in its entirety does not support its conclusions of law, we determine that the trial court erred. We further conclude that defendant Neil Matthew Sargeant was prejudiced by the error. Accordingly, we modify and affirm the Court of Appeals opinion reversing defendant's convictions and remanding for a new trial.

On the morning of 8 November 2005, two people walking near a covered bridge on Sleepy Hollow Lane in a rural part of Watauga County noticed a Subaru automobile parked nearby. Seeing smoke issuing from the car, they went to a friend's house and asked him to call 911. Deputy Kelly Redmond of the Watauga County Sheriff's Department responded and observed smoke rising through the vehicle's partially opened sunroof. No one was near the car or in its passenger area, but when Deputy Redmond opened the trunk, he found that it was filled with smoke and contained the body of the victim, Stephen Harrington. The victim's hands were bound with duct tape and his head was "completely covered" with duct tape "similar to the way that a mummy's head would [be] wrapped up." Although the body was partially burned, Deborah Radisch, M.D., Associate Chief Medical Examiner for North Carolina, testified that she performed the autopsy and determined the cause of death was asphyxia from smothering. She added that because the duct tape covered the victim's mouth and nose, he probably would have lost consciousness in "sixty to ninety seconds" and died within "five to ten minutes." The absence of carbon monoxide in the victim's blood indicated that he was not breathing when the fire reached him.

During the investigation of the crime, Watauga County Sheriff's Detective Dee Dee Rominger took a statement from Matthew Brandon Dalrymple (Dalrymple) on 10 September 2007. In his statement, Dalrymple related that he and defendant Neil Matthew Sargeant (defendant) were at defendant's house in Boone on the evening of 7 November 2005, where they smoked marijuana and snorted cocaine while playing video games. Dalrymple stated that he fell asleep on a couch about 7:00 p.m. but awoke around 11:00 p.m. and went into the kitchen, where he saw Kyle Triplett (Triplett) chok-

ing "a guy." As Dalrymple watched, Triplett hit the victim in the temple with the butt of a pistol, knocking him down. After kicking the victim in the side and stomping on the back of his head, Triplett used duct tape first to secure the victim's hands behind his back and then to tape the victim's head "from chin to his for[e]head."

Dalrymple continued that Triplett pointed the pistol at Dalrymple and ordered him to drive. As Dalrymple prepared to follow Triplett's instructions, he passed defendant in the hallway. Defendant asked what was going on, but Dalrymple did not respond. Dalrymple said he heard defendant repeat, "What the f[——] is going on," then add, "Get this s[——] out of my house." Dalrymple dressed and went outside, where he observed drag marks on the ground and saw Triplett putting the victim into the trunk of the victim's car and closing the lid. Dalrymple stated that he saw the victim's leg move. As Triplett drove away in the victim's car, Dalrymple entered the car belonging to defendant's girlfriend and asked defendant to come with him. Dalrymple drove defendant as they followed Triplett to a covered bridge where Dalrymple saw Triplett moving around inside the victim's car, which subsequently began to burn. Triplett then walked to the trunk of that car, which also began to burn. Triplett left the trunk open and joined Dalrymple and defendant in the other car, after which they left at high speed.

At the time Dalrymple's statement was taken, the State was preparing to try Triplett for Harrington's murder. Accordingly, on 13 September 2007, the State entered into an agreement with Dalrymple, under which Dalrymple would give "truthful testimony concerning the events surrounding the death of Stephen Harrington if called upon by the [S]tate to do so." The truthfulness of Dalrymple's trial testimony would be measured against his 10 September 2007 statement to investigators. The agreement also granted Dalrymple use immunity by providing that "the State will not use the statement against [Dalrymple] in any state criminal proceedings, and will not use any evidence derived from such statement against him in any state judicial proceeding." However, Dalrymple never testified against Triplett. During his trial, Triplett pleaded guilty on 20 September 2007 to second-degree murder, first-degree kidnapping, robbery with a dangerous weapon, burning personal property, and conspiracy to sell cocaine.

The State then proceeded to try defendant capitally for the murder of Harrington. Defendant was charged with first-degree murder, in violation of N.C.G.S. § 14-17; robbery with a dangerous weapon, in

violation of N.C.G.S. § 14-87; first-degree kidnapping, in violation of N.C.G.S. § 14-39; and burning of personal property, in violation of N.C.G.S. § 14-66.

At defendant's trial, the State presented Triplett as a witness. Triplett had made two prior statements to investigators. In the first, a rather disjointed narration taken the day after the murder, Triplett told investigators he was awakened by sounds of a struggle and heard someone yell, "Why me," but did not immediately come out of his room. When he emerged from his room a short time later to use the bathroom, he had his back turned to the commotion and covered his ears. Triplett told the investigators he did not see the victim's face, which had been covered with gray tape. Triplett related that he "had to pick [the victim] up" and, when doing so, noticed that the hands had been bound and had turned blue and that the body was lifeless. According to Triplett, defendant and Dalrymple said to him that it "could have been you." Defendant had a pistol and made Triplett drive to a covered bridge while Dalrymple followed in another car. Triplett added that he lit the tape on the victim's arms. At defendant's trial, this statement was read to the jury by State Bureau of Investigation Special Agent Wade Colvard.

Triplett made a second, more detailed statement the day before he testified against defendant. In his second statement, Triplett reported that defendant called him and told him to come to defendant's house, put on gloves, grab the victim when the victim came through the door, and put a gun to his head. Triplett stated that he complied with defendant's instructions when the victim arrived and that defendant afterwards wrapped the victim's head with duct tape. Triplett added that, once the victim was felled, Dalrymple kicked him in the face and took between four and six ounces of cocaine from the victim's pocket. Triplett said that he and defendant dragged the victim's body to the car and put it in the trunk and that they drove to the covered bridge, followed by Dalrymple, who was driving another car. Defendant sprayed lighter fluid on the body and Triplett ignited it. At defendant's trial, Triplett provided detailed testimony on behalf of the State that was consistent with his second statement. Under cross-examination, Triplett testified that he did not remember saying some of the things contained in his 8 November 2005 statement and that other things he had said then were not true. Although the State presented additional evidence of defendant's guilt, it did not call Dalrymple as a witness against defendant.

After the State rested its case-in-chief, defendant presented evidence that portrayed Triplett as the principal assailant in the attack upon the victim. However, when defendant called Dalrymple as a witness, Dalrymple refused to testify, invoking his rights under the Fifth Amendment to the Constitution of the United States. Because Dalrymple's refusal rendered him unavailable to defendant, defendant moved to introduce Dalrymple's 10 September 2007 statement as a hearsay exception pursuant to N.C.G.S. § 8C-1, Rule 804(b)(5). The State objected, arguing that the statement lacked indicia of reliability and was inadmissable because it was not trustworthy. After considering the arguments of counsel and conducting additional research, the trial court made oral findings of fact and conclusions of law on the record, then sustained the State's objection.

At the conclusion of all the evidence, the jury convicted defendant of first-degree murder, first-degree kidnapping, robbery with a dangerous weapon, and burning personal property. Although the jury had been death-qualified, the State elected not to offer evidence of aggravating circumstances. Accordingly, the trial court sentenced defendant to a term of life imprisonment without parole for the murder. In addition, the court sentenced defendant to a consecutive term of 100 to 129 months for first-degree kidnapping, then consolidated the remaining charges and imposed an additional consecutive sentence of 60 to 81 months.

Defendant appealed. In a divided decision, the Court of Appeals reversed defendant's convictions and remanded the case for a new trial. *State v. Sargeant*, —— N.C. App. ——, ——, 696 S.E.2d 786, 800 (2010). The majority held that Dalrymple's statement was admissible under the residual hearsay exception found in Rule 804(b)(5) of the Rules of Evidence. *Id.* at , 696 S.E.2d at 799. The dissenting judge disagreed, concluding that the statement was inadmissible. *Id.* at ——, 696 S.E.2d at 809 (Ervin, J., dissenting). In its opinion, the Court of Appeals also considered the procedure used by the trial court to take the verdicts in this case. Briefly stated, the trial court on different days took verdicts on the various theories of first-degree murder that were submitted to the jury, a process fully described in the opinion of the Court of Appeals. *Id.* at ——, 696 S.E.2d at 789-92 (majority). Although we agree with the Court of Appeals majority that the procedure was erroneous, our resolution of the hearsay issue obviates the need to analyze whether the error, which is unlikely to recur upon retrial, was prejudicial. Accordingly, we consider whether the trial court abused its discretion in sustaining the State's objection when

defendant proffered Dalrymple's hearsay statement pursuant to the residual hearsay exception found in Rule 804(b)(5). *State v. Smith*, 315 N.C. 76, 97, 337 S.E.2d 833, 847 (1985) ("[A]missibility of hearsay statements pursuant to the Rule 803(24) residual hearsay exception is within the sound discretion of the trial court.").

[1] "Hearsay is not admissible except as provided by statute or by these rules." N.C.G.S. § 8C-1, Rule 802 (2009). Although Dalrymple's statement was unquestionably hearsay in that it was being offered by defendant for the truth of its contents, *id.*, Rule 801(a), (c) (2009), defendant contended that it was admissible under the residual hearsay exception codified at N.C.G.S. § 8C-1, Rule 804(b)(5). That rule states:

> The following [is] not excluded by the hearsay rule if the declar-ant is unavailable as a witness:
>
> . . . .
>
> (5) . . . . A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstan-tial guarantees of trustworthiness, if the court deter-mines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the pro-ponent of it gives written notice stating his intention to offer the statement and the particulars of it, including the name and address of the declarant, to the adverse party sufficiently in advance of offering the statement to pro-vide the adverse party with a fair opportunity to prepare to meet the statement.

*Id.*, Rule 804(b)(5) (2009). We gave guidance to the trial courts for applying this exception when we stated that:

> Once a trial court establishes that a declarant is unavailable pursuant to Rule 804(a) of the North Carolina Rules of Evidence, there is a six-part inquiry to determine the admissibility of the hearsay evidence proffered under Rule 804(b)(5). *State v. Fowler*, 353 N.C. 599, 608-09, 548 S.E.2d 684, 696 (2001), *cert.*

*denied,* 535 U.S. 939, 152 L. Ed. 2d 230 (2002); *State v. Triplett,* 316 N.C. 1, 8-9, 340 S.E.2d 736, 741 (1986). Rule 803(24) of the North Carolina Rules of Evidence is essentially identical to Rule 804(b)(5), but it does not require that the declarant be unavailable. *Triplett,* 316 N.C. at 7, 340 S.E.2d at 740. Under either of the two residual exceptions to the hearsay rule, the trial court must determine the following: (1) whether proper notice has been given, (2) whether the hearsay is not specifically covered elsewhere, (3) whether the statement is trustworthy, (4) whether the statement is material, (5) whether the statement is more probative on the issue than any other evidence which the proponent can procure through reasonable efforts, and (6) whether the interests of justice will be best served by admission. *State v. Smith,* 315 N.C. 76, 91-98, 337 S.E.2d 833, 844-48 (1985); *accord* N.C.G.S. § 8C-1, Rule 804(b)(5) (2001); *see also Triplett,* 316 N.C. at 8-10, 340 S.E.2d at 740-41.

*State v. Valentine,* 357 N.C. 512, 517-18, 591 S.E.2d 846, 852 (2003).

We agree with the parties that five of these factors have been satisfied and the only question presented here is whether the statement is trustworthy. "To be admissible under the residual exception to the hearsay rule, the hearsay statement must possess 'guarantees of trustworthiness' that are equivalent to the other exceptions contained in Rule 804(b)." *State v. McLaughlin,* 316 N.C. 175, 179, 340 S.E.2d 102, 104 (1986) (quoting *United States v. Bailey,* 581 F.2d 341, 348 (3d Cir. 1978)).

When determining the trustworthiness, the following considerations are at issue: (1) whether the declarant had personal knowledge of the underlying events, (2) whether the declarant is motivated to speak the truth or otherwise, (3) whether the declarant has ever recanted the statement, and (4) whether the declarant is available at trial for meaningful cross-examination.

*Valentine,* 357 N.C. at 518, 591 S.E.2d at 852-53 (citations omitted); *see also Triplett,* 316 N.C. at 10-11, 340 S.E.2d at 742. Although this list of factors is not exhaustive, *see Triplett,* 316 N.C. at 10-11, 340 S.E.2d at 742, the trial court cited *Triplett* and limited its analysis to these four considerations. The record establishes that Dalrymple had personal knowledge and never recanted his statement. Accordingly, we consider whether competent evidence in the record indicates that he was motivated to speak the truth and was available for meaningful cross-examination.

When ruling on an issue involving the trustworthiness of a hearsay statement, a trial court must make findings of fact and conclusions of law on the record. *Valentine,* 357 N.C. at 518, 591 S.E.2d at 853. We have held that admitting evidence under the catchall hearsay exception set out in Rule 803(24) (Hearsay exceptions; availability of declarant immaterial) is error when the trial court fails to make adequate findings of fact and conclusions of law sufficient to allow a reviewing court to determine whether the trial court abused its discretion in making its ruling. *State v. Smith,* 315 N.C. at 97, 337 S.E.2d at 847. If the trial court either fails to make findings or makes erroneous findings, we review the record in its entirety to determine whether that record supports the trial court's conclusion concerning the admissibility of a statement under a residual hearsay exception. *See State v. Daughtry,* 340 N.C. 488, 514, 459 S.E.2d 747, 760 (1995), *cert. denied,* 516 U.S. 1079, 133 L. Ed. 2d 739 (1996); *see also Valentine,* 357 N.C. at 518-19, 591 S.E.2d at 853. If we conclude that the trial court erred in excluding Dalrymple's hearsay statement, we consider whether defendant was prejudiced. N.C.G.S. §§ 15A-1442(4)(c), -1443 (2009).

The trial court made oral findings of fact that were commingled with its conclusions of law. These intertwined findings and conclusions included several errors. For instance, in assessing Dalrymple's motivation to speak the truth, the trial court stated that Dalrymple's refusal to testify "kept the death penalty in play in his own criminal case and therefore [Dalrymple] has acted against his own self interests by refusing to testify when called by the defense in this matter." Although this analysis supports admitting the statement, it is incorrect in two respects. First, the agreement between Dalrymple and the State required only that he testify for the State and put him under no obligation to testify on behalf of defendant. Second, the trial court's analysis addressed only Dalrymple's decision not to testify, not his motivation to be truthful at the time he made his statement. Accordingly, this finding by the trial court is not supported by competent evidence in the record.

Next, this Court has stated that a factor to be considered when determining the admissibility of hearsay evidence under Rule 803(24) is "the practical availability of the declarant at trial for meaningful cross-examination. [This factor] also must be considered in weighing the 'circumstantial guarantees of trustworthiness' under Rule 804(b)(5)." *Triplett,* 316 N.C. at 11, 340 S.E.2d at 742 (internal citation omitted). The trial court found that admitting Dalrymple's statement

"would put the Court in position in every case where a co-defendant makes an out of Court statement that could be under some circumstances considered exculpatory as to that co-defendant against another co-defendant admissible into evidence even though it's an unsworn statement by the co-defendant simply taking the Fifth Amendment and refusing to testify and not being subject to cross-examination." This analysis is so broad as to effectively nullify Rule 804(b)(5), which permits admission of a hearsay statement when the conditions set out in the rules of evidence are satisfied.

In addition, this finding also assumes that Dalrymple would be completely unavailable for cross-examination. However, the record reveals that while Dalrymple's invocation of his rights under the Fifth Amendment to the Constitution of the United States unquestionably rendered him "unavailable" to *defendant* as a witness for purposes of Rule 804(b)(5), the terms of the agreement did not preclude his testimony under all circumstances. Under the agreement, the State provided Dalrymple use immunity so that his testimony and his statement could not be used against him if he were called as a witness *by the State*. Because Dalrymple's agreement contained no provision for immunity if he were called by defendant, his invocation of his Fifth Amendment rights was predictable. However, if the trial court had admitted Dalrymple's hearsay statement during defendant's presentation of evidence, the State could have responded by calling Dalrymple as an adverse witness and cross-examining him to undermine his testimony and reinforce its theory that defendant was the most culpable of the lot. N.C.G.S. § 8C-1, Rule 607 (2009). In that scenario, since the State called him to testify, Dalrymple's agreement providing him use immunity would trump his Fifth Amendment rights, subjecting him to meaningful cross-examination, as set out in *Triplett*, 316 N.C. at 11, 340 S.E.2d at 742.

In addition, the trial court made no findings on the effect of the agreement on Dalrymple's motivation to speak truthfully. We emphasize again that the issue is not whether Dalrymple's statement is objectively accurate; the determinative question is whether Dalrymple was motivated to speak truthfully when he made it. The agreement between Dalrymple and the State, reached when Dalrymple provided his statement, appears designed to ensure his truthfulness. According to the terms of the agreement, Dalrymple's statement was not taken in the anticipation that it would be admitted at trial. Instead, it was taken for the secondary purposes of establishing what Dalrymple's trial testimony would be and to provide a

STATE v. SARGEANT

[365 N.C. 58 (2011)]

gauge by which his testimony would be measured in determining whether he kept his end of the bargain. Believing that he would be called upon to testify and that his statement would be made available to the defendant on trial (at that time, presumably Triplett), Dalrymple knew he would be subject to cross-examination by the State if he deviated from his statement and by the defendant on trial if he did not. Accordingly, he knew that any falsehoods could be exposed, possibly depriving him of the benefit of his bargain and thereby giving him a motivation to speak truthfully.

Thus, our review of the record indicates that, of the four considerations identified in *Valentine* and *Triplett* as being useful in determining the trustworthiness of a hearsay statement, all the evidence indicated that Dalrymple had personal knowledge and never recanted. As to the other two considerations, Dalrymple's motivation to speak the truth and his availability for meaningful cross-examination, the court's conclusions that these considerations had not been satisfied were made on the basis of inaccurate and incomplete findings of fact used to reach unsupported conclusions of law. Accordingly, the trial court erred in excluding Dalrymple's hearsay statement.

[2] Having determined that the trial court's exclusion of Dalrymple's statement was error, we must consider whether defendant was prejudiced by its exclusion. Although trials are mechanisms for ferreting out the truth, in this case it is apparent that the objective facts of what happened the night the victim was killed are elusive. Both Dalrymple and Triplett gave initial statements in the immediate aftermath of the murder. As detailed above, Dalrymple's statement implicated Triplett and, to a lesser extent, defendant, while Triplett's statement implicated defendant and Dalrymple. Faced with these fundamentally inconsistent and incompatible statements, the State negotiated first with Dalrymple, providing use immunity in the apparent expectation of calling him as a witness against Triplett. However, when Triplett entered a negotiated plea to reduced charges mid-trial and the State turned its attention to the task of proceeding against defendant, the prosecutor elected to present Triplett, not Dalrymple, as its eyewitness. When defendant offered Dalrymple's statement to the jury as part of his defense, the State successfully resisted. Although we are cognizant that circumstances may change as a case progresses, the reason for the State's decision to jettison Dalrymple in favor of Triplett is not in the record. Nevertheless, with that decision Dalrymple became an albatross to the prosecution but a poten-

tial lifeline for defendant. As a matter of fundamental fairness, the exclusion of Dalrymple's statement deprived the jury of evidence that was relevant and material to its role as finder of fact.

The impact of the exclusion of this evidence is apparent from the record. This case hinged upon the credibility of the witnesses. The jurors asked several questions of the court during their deliberations, including one relating to perjury: "Are there any possible consequences/punishments/repercussions to a witness for lying under oath? Specifically a witness who made a plea agreement with the State?" Since Triplett was the only cooperating codefendant who testified, this skeptical question surely referred to him. In addition, defendant was on trial for his life when he tendered Dalrymple's hearsay statement. As to the murder charge, the jury was instructed on first-degree murder on three different theories (premeditation and deliberation, lying in wait, and felony murder), second-degree murder, and not guilty. As to the robbery charge, the jury was instructed on robbery with a dangerous weapon, common law robbery, and not guilty. Consequently, as to these offenses, the jury was required to decide not only defendant's guilt *vel non* but also, if he were found guilty, the degree of his guilt and the basis or bases of a first-degree murder conviction. The jury's verdicts as to all these matters were based upon incomplete information.

Defendant has shown a reasonable possibility that the admission of Dalrymple's statement implicating Triplett would have led to a different verdict against him. N.C.G.S. § 15A-1443(a) (2009); *see, e.g., State v. Augustine,* 359 N.C. 709, 731, 616 S.E.2d 515, 531 (2005) (citing N.C.G.S. § 15A-1443 and noting that to "establish prejudice," a defendant must show "a reasonable possibility that a different result would have been reached" had an evidentiary ruling not been made), *cert. denied,* 548 U.S. 925, 165 L. Ed. 2d 988 (2006). Accordingly, the trial court's exclusion of Dalrymple's statement was prejudicial error. We affirm the decision of the Court of Appeals to remand for a new trial.

MODIFIED AND AFFIRMED.

Justice Jackson did not participate in the consideration or decision of this case.