NO. COA13-482

NORTH CAROLINA COURT OF APPEALS

Filed: 18 March 2014

STATE OF NORTH CAROLINA

    v.                                Watauga County
                                      Nos. 05 CRS 6683-85, 52810,
NEIL MATTHEW SARGENT

Appeal by defendant from judgments entered 8 November 2012 by Judge James U. Downs in Watauga County Superior Court. Heard in the Court of Appeals 22 October 2013.

    *Attorney General Roy Cooper, by Special Deputy Attorney David J. Adinolfi II, for the State.*

    *Michele Goldman for defendant-appellant.*

BRYANT, Judge.

Where the prosecutor responded to defense counsel's endorsement of defendant's witness as truthful by stating that defendant's witness did not give truthful testimony, the trial court did not err in failing to intervene during the prosecutor's closing argument. Where defendant placed his character at issue by testifying at length about his positive military service, the prosecution was allowed to examine the

circumstances of his general discharge from the United States Army.

On 28 November 2005, a Watauga County grand jury indicted defendant Neil Matthew Sargent on charges of first-degree murder with aggravating factors, first-degree kidnapping, burning of personal property, and robbery with a dangerous weapon stemming from events leading to the death of Steven William Harrington. On 5 November 2007, defendant was indicted on a second count of robbery with a dangerous weapon.

On 24 April 2008, following a jury trial in Watauga County Superior Court, the Honorable Ronald K. Payne, Judge presiding, entered judgment against defendant on the charges of first-degree murder, first-degree kidnapping, robbery with a dangerous weapon, and burning of personal property. Defendant appealed to this Court from the entry of these judgments. In *State v. Sargeant*, 206 N.C. App. 1, 696 S.E.2d 786 (2010), this Court granted defendant a new trial due in part to the exclusion of a statement made by Matthew Brandon Dalrymple to law enforcement officers on 10 September 2007. Following an appeal by the State, our Supreme Court affirmed the decision of this Court to grant defendant a new trial. *See State v. Sargent*, 365 N.C. 58, 707 S.E.2d 192 (2011) (hereinafter *Sargent I*).

A new trial commenced during the 29 October 2012 session of Watauga County Criminal Superior Court, the Honorable James U. Downs, Judge presiding. The evidence presented at trial tended to show that on the evening of 7 November 2005, Harrington was assaulted, robbed, and asphyxiated in a residence located at 121 Poplar Drive in Boone, then driven to another location where his body was doused with lighter fluid and set on fire in the trunk of a car. Three people were present in the home at the time of Harrington's death and at the location of the burning car: defendant, Kyle Triplett, and Dalrymple.

During the prosecution's case-in-chief, the prosecutor called Kyle Triplett, a witness who had also testified at defendant's first trial. Triplett testified that defendant orchestrated an ambush of Harrington. On the evening in question, Triplett followed defendant's explicit instructions whereby Triplett was to grab Harrington by the throat and hold a gun to his head. Defendant provided Triplett with a gun. Triplett testified that when Harrington appeared, Triplett grabbed Harrington by the throat and choked him until his face turned red. When Harrington dropped to the floor, defendant began wrapping Harrington's head in duct tape. Triplett testified that following this, he and defendant began punching

Harrington and then kicking him, at which point Dalrymple joined in. After Harrington stopped moving, Dalrymple reached into Harrington's pants pocket and removed a softball sized box that contained four to six ounces of cocaine. Harrington's body was then carried outside and placed in the trunk of Harrington's car. Triplett testified that he drove Harrington's car with defendant as a passenger and Dalrymple following in a second vehicle. Triplett stopped Harrington's car on a roadside along Sleepy Hollow Lane. Triplett testified that defendant opened the trunk, doused lighter fluid on Harrington's body and ignited a fire. Triplett and defendant then got into the car driven by Dalrymple and returned to defendant's residence.

During the presentation of defendant's case, defendant called Dalrymple to testify. Dalrymple testified that on the evening of 7 November 2005, he was using the bathroom when he heard a knock on an outside door. When Dalrymple exited the bathroom, he observed Triplett choking a man at gunpoint. Dalrymple had never before seen the man being choked. Dalrymple testified that Triplett hit the victim in the temple with the butt of a handgun. When the victim dropped to the floor, Triplett began kicking the victim in the ribs. Dalrymple testified that Triplett wrapped the victim's head in duct tape

and taped his hands behind his back. Dalrymple testified that when Triplett told Dalrymple that Dalrymple was to drive one of the vehicles, Dalrymple refused, but then Triplett pointed the gun at him. When Dalrymple headed toward a bedroom to retrieve his clothes, he passed defendant in the hallway. Defendant asked, "what the f**k is going on[.]" Having gotten dressed and stepped outside, Dalrymple testified that he observed Triplett placing the victim's body in the trunk of a car. Triplett then drove the car containing the victim's body while Dalrymple followed in a second vehicle with defendant as a passenger. When Triplett pulled onto the roadside off of Sleepy Hollow Lane, Dalrymple observed Triplett open the trunk of the vehicle. Dalrymple soon saw flames. Triplett got into Dalrymple's car, and the three men drove off. According to Dalrymple, defendant did not exit the vehicle in which he was riding.

Defendant testified on his own behalf, consistent with the version of events testified to by Dalrymple.

Following the close of the evidence, the jury returned verdicts finding defendant guilty of first-degree murder on the bases of lying in wait, felony murder, and premeditation and deliberation; first-degree kidnapping; robbery with a dangerous weapon; and burning personal property. The trial court entered

judgment in accordance with the jury verdicts. On the charge of first-degree murder, the trial court sentenced defendant to a term of life imprisonment without parole. On the charges of first-degree kidnapping, robbery with a dangerous weapon, and burning personal property, the trial court entered a separate consolidated judgment and sentenced defendant to a term of 80 to 105 months to be served consecutive to the life sentence. Defendant appeals.

_____

On appeal, defendant raises the following issues: whether the trial court (I) erred in failing to intervene during the prosecutor's closing argument; and (II) committed plain error in allowing the prosecution to introduce evidence of defendant's prior assault.

*I*

Defendant first argues that the trial court erred by failing to intervene *ex mero motu* during closing arguments to address the prosecutor's discussion of facts not in evidence, misstating the evidence not in evidence, and offering an opinion on the credibility of a witness. We disagree.

"The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from

opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*." *State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002) (citation omitted).

Pursuant to North Carolina General Statutes, section 15A-1230, "Limitations on argument to the jury,"

> [d]uring a closing argument to the jury an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice. An attorney may, however, on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue.

N.C. Gen. Stat. § 15A-1230(a) (2013); *see also State v. Gladden*, 315 N.C. 398, 422, 340 S.E.2d 673, 688 (1986) ("Although the closing arguments of counsel are largely within the control and discretion of the trial court, it is well established that counsel is to be afforded wide latitude in the argument of fiercely contested cases. Counsel for both sides may argue the law and the facts in evidence, along with all reasonable inferences to be drawn from them. Counsel may not, however, raise incompetent and prejudicial matters nor refer to facts not in evidence. Counsel is also prohibited from placing before the

jury his own knowledge, beliefs, and personal opinions not supported by the evidence.").  "Only where the prosecutor's argument affects the right of the defendant to a fair trial will the trial judge be required to intervene where no objection has been made." *State v. Zuniga*, 320 N.C. 233, 253, 357 S.E.2d 898, 911 (1987) (citation omitted).  "A prosecutor's argument is not improper where it is consistent with the record and does not travel into the fields of conjecture or personal opinion." *Id.*

### a. Argument of Facts Not In Evidence

Defendant contends the State lacked evidence to support its claims that "Dalrymple [was] [the State's] deal with the devil[,]" that the deal "was a mistake[,]" that the State had "figured if we put a big enough carrot in front of [Dalrymple], maybe [Dalrymple would] tell the truth[,]" that Dalrymple did not tell the truth, and the State was "stuck with [Dalrymple's] plea."

The State responds that the Dalrymple plea offer was in evidence as defense exhibit #9.  However, defense exhibit #9 was actually an agreement wherein the State agreed to forego seeking the death penalty in exchange for Dalrymple's truthful testimony at his own trial.  The agreement provided that the truthfulness of his testimony was to be measured against his September 2007

statement.

Defendant contends that the State's claim that it would not call Dalrymple as a witness because he "would not know the truth if it came up and slapped him in the head" was refuted by defense exhibit #9. However, even assuming that defense exhibit #9 does refute the State's claim, the fact that evidence refutes the State's closing argument does not indicate that the State argued facts not in evidence.

Defendant further challenges the State's remarks that the Dalrymple plea was a mistake "because that man was just as guilty of first-degree murder [and] kidnapping as every other defendant here." Defendant contends that the remarks were improper because, by "offering unchallenged testimony to the jury during its closing, the State was able to strike an unfair blow against [defendant's] most crucial witness." However, the State's remarks are supported by evidence presented at trial that Dalrymple played an active role in the murder of Harrington as discussed earlier in this opinion. Defendant has not shown error on this basis and his argument is overruled.

### b. Offered A Personal Opinion On Witness Credibility

Defendant also argues that the State's claim that "it would not call Dalrymple to testify because Dalrymple 'would not know

the truth if it came up and slapped him on the head' offered a personal opinion" as to witness credibility. Defendant cites *State v. Holloway*, 82 N.C. App. 586, 347 S.E.2d 72 (1986), in which two doctors were improperly permitted to testify "that in their opinion the child had testified *truthfully*." *Id.* at 587, 347 S.E.2d at 73. The present case is distinguishable from *Holloway* because the prosecutor was not giving an opinion as to witness credibility in the form of sworn testimony.

Defendant's argument emphasizes the significance of any improprieties in this case where the jury's verdict "hinged on its determination of Triplett's, Dalrymple's, and [Defendant's] credibility[.]" Similarly, our Supreme Court noted that the first trial indicated that "the objective facts of what happened the night the victim was killed are elusive." *Sargeant I*, 365 N.C. at 67, 707 S.E.2d at 198. The Supreme Court further noted that "the reason for the State's decision to jettison Dalrymple in favor of Triplett is not in the record." *Id.*

In the present case, Defendant made the following statements in his closing argument to the jury:

> Just as Mr. Dalrymple's agreement states, he will testify truthfully if called upon by the State to do so. Why didn't the State call him at this trial? Why not? It's in black and white. Don't take my word for it. Look at this. They never called him. I had

to call him, and he gave truthful testimony. He has been pretty much consistent throughout.

In its closing, the State made the following statements to the jury regarding Dalrymple:

You darn right we're not going to put him up, because that man would not know the truth if it came up and slapped him in the head. But they want you to believe that version of truth or what they believe the truth was.

The challenged portion of the prosecutor's argument seems to answer the very question that the Supreme Court noted was not in the record of the first trial. As to the question of why the State jettisoned Dalrymple in favor of Triplett, the prosecutor stated:

Dalrymple is our deal with the devil. It was a mistake . . . . We're stuck with that plea. The plea was a mistake and should never have happened . . . because that man was just as guilty of first-degree murder [and] kidnapping as every other defendant here.

Evidence that Dalrymple entered into a plea agreement with the State does not tell *why* the State "jettison[ed] Dalrymple in favor of Triplett" at this trial. *Id.* The prosecutor informed the jury, by way of closing argument, of her opinion and belief as to the credibility of the various defendants and that the prosecution had made a mistake by entering into the plea

agreement with Dalrymple. This statement, made in response to defendant's closing argument, seems to venture close to the area of "conjecture or personal opinion." *Zuniga*, 320 N.C. at 253, 357 S.E.2d at 911. However, our Supreme Court has found no error in a credibility argument based on personal opinion from the State where the defendant "opened the door" to the argument. *State v. Gladden*, 315 N.C. 398, 423, 340 S.E.2d 673, 689 (1986). In *Gladden*, the defendant stated that a State's witness "could not possibly remember . . . every detail in this case" and "insinuated that [the witness's] testimony had not been truthful." *Id.* The State, in its closing, argued that its witness was "one of the finest Sheriffs that [the prosecutor had] ever met[.]" *Id.* at 423, 340 S.E.2d at 688. Our Supreme Court held that the "expression of personal opinion by the prosecutor, while improper, was not, however, so grossly improper as to require the trial court to intervene *ex mero motu*." *Id.* at 423, 340 S.E.2d at 688-89.

The State's remarks appear to be in response to defendant's attempt to bolster Dalrymple's credibility. As in *Gladden*, defendant's statements in closing opened the door to the State's response. Therefore, while the State's remarks may have been improper, they were "not, however, so grossly improper as to

require the trial court to intervene *ex mero motu*." *Id.* at 423, 340 S.E.2d at 689. Defendant's argument is overruled.

*II*

Next, defendant argues that the State's evidence of a prior assault constituted evidence of a propensity for violence and amounted to plain error. We disagree.

> [T]he plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Lawrence*, 365 N.C. 506, 516-17, 723 S.E.2d 326, 333 (2012) (citation and quotations omitted).

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied

> cautiously and only in the exceptional case
> the error will often be one that seriously
> affect[s] the fairness, integrity or public
> reputation of judicial proceedings.

*Id.* at 518, 723 S.E.2d at 334 (citations and quotations omitted).

Pursuant to General Statutes, section 8C-404,

> Evidence of a person's character or a trait
> of his character is not admissible for the
> purpose of proving that he acted in
> conformity therewith on a particular
> occasion, except . . . [e]vidence of a
> pertinent trait of his character offered by
> an accused, or by the prosecution to rebut
> the same[.]

N.C. Gen. Stat. ' 8C-1, Rule 404(a)(1) (2013); *see also State v. Roseboro*, 351 N.C. 536, 553, 528 S.E.2d 1, 12 (2000) ("A criminal defendant is entitled to introduce evidence of his good character, thereby placing his character at issue. The State in rebuttal can then introduce evidence of defendant's bad character. *See State v. Gappins*, 320 N.C. 64, 69, 357 S.E.2d 654, 658 (1987). Such evidence offered by the defendant or the prosecution in rebuttal must be 'a pertinent trait of his character.' N.C.G.S. § 8C–1, Rule 404(a)(1) (1999).").

Before this Court, defendant challenges the prosecution's cross-examination of him as to his use of cocaine and prior accusation of assaultive behavior while a member of the United

States Army. In response, the State argues that on direct examination, defendant placed his character at issue by testifying about his military service. On direct examination, defendant testified at length about his positive military service: serving in the United States Army from September 1999 to January 2003, defendant worked with a field artillery unit in both Kosovo and Afghanistan; also, he was awarded the United Nations Kosovo Liberation Medal, Army Service Ribbon, and a National Defense bar. Defendant's Kosovo Liberation medal was admitted into evidence. Defendant engaged in the following examination on direct examination:

> Q    Now, Mr. Sargent, when did you get
>      discharged from the US Army?
>
> A    I believe the exact date was January
>      3rd, 2003.
>
> Q    And do you remember, do you recall what
>      the character of your discharge was?
>
> A    It was on, on other than honorable
>      conditions.
>
> Q    What they call general?
>
> A    General.
>
> . . .
>
> Q    Who were you living with?
>
> A    Well, when I initially got out of the
>      Army I was having some substance abuse

> problems with alcohol and marijuana so my aunt and uncle that I lived with before I went in the Army they thought it would be a good idea if I came back and was in a better environment . . . .

On cross-examination, the prosecutor focused on the circumstances of defendant's discharge from the military. We look to the following exchange, which took place in the absence of any objection by defendant:

> Q    . . . [I]n fact, when you were talking about all of your military accomplishments, you didn't tell the jury [about your] less than honorable circumstances for using cocaine, did you?

> A    I said I was discharged for other than honorable conditions, I said that.

> Q    Did you tell the jury that you were discharged for other than honorable conditions you were discharged . . . on 11 December, 2002 for using cocaine and for assault, is that right?

> A    That is correct.

> Q    And in fact, it was so bad, sir, that the commander there at Fort Bragg . . . requested that you be barred from Fort Bragg pending your hearing because of your assault and use of cocaine, didn't he?

> A    That's correct.

> Q    You didn't tell the jury that, did you?

> A    I wasn't asked.

Q    Well, sir, you told the jury all about all the fine things you had done in the military, and all the honors, I believe you held up a certificate here about service overseas and the battalions you were in, and how you supported the artillery, supported people over in the, the Vulcans and all of that, but you didn't tell them about being dishonorably discharged, did you?

A    I just answered the questions my lawyer asked me.

. . .

Q    You tried to mislead the jury into believing you were a wonderful fine soldier serving your country when in fact you were dishonorably discharged for the use of cocaine and for assault?

. . .

And that is exactly what you're here today for is using cocaine and murder, isn't it?

A    That's correct.

Because defendant placed his character at issue by testifying at length about his positive military service record and acknowledging that he received a general discharge from the United States Army, the State was entitled to examine the circumstances that led to defendant's discharge. *See Roseboro*, 351 N.C. 536, 553, 528 S.E.2d 1, 12 (2000) ("A criminal defendant is entitled to introduce evidence of his good

character, thereby placing his character at issue. The State in rebuttal can then introduce evidence of defendant's bad character."). Therefore, we hold there was no error in the admission of this evidence. Defendant's argument is overruled.

No error.

Judges McGEE and STROUD concur.