IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-115

Filed 5 December 2023

Wake County, No. 19CRS223407

STATE OF NORTH CAROLINA

      v.

ANDRE EUGENE LESTER

Appeal by defendant from judgment entered 21 July 2022 by Judge Thomas H. Lock in Wake County Superior Court. Heard in the Court of Appeals 20 September 2023.

> *Attorney General Joshua H. Stein, by Deputy General Counsel Tiffany Y. Lucas, and General Counsel Fellow Zachary R. Kaplan, for the State.*
>
> *Mark L. Hayes, for the defendant-appellant.*

TYSON, Judge.

Andre Eugene Lester ("Defendant") appeals from judgments entered upon the jury's verdicts of guilty of statutory rape of a child, statutory sex offense with a child, and indecent liberties with a child. The State has failed to show the Constitutional confrontation error was harmless beyond a reasonable doubt. Defendant is entitled to a new trial.

## I.    Background

Thirteen-year-old Riley lived in an apartment in Cary with her father and her

fifteen-year-old brother. (Pseudonym is used to protect the identity of minors. N.C. R. App. P. 42(b). Riley's father worked during the day and left his children at home alone after school. Riley's mental health diagnoses included major depressive disorder without psychosis, which had previously required "several inpatient psychiatric hospitalizations." Riley also exhibited signs of cutting herself.

Riley's father took her to a Duke Hospital Clinic ("Duke") in the summer of 2019. Riley privately met with Kristen Russell ('Russell"), a social worker. Russell inquired of Riley about her sexual health and experiences. Riley asserted she had previous sexual experiences with a man around thirty years old. Riley told Russell she did not believe this experience was wrong and did not want to tell an adult. Duke is a mandatory reporter of alleged sexual assaults and reported her allegations to Riley's father and to law enforcement officers. Riley was referred to and interviewed at the SAFEchild Advocacy Center.

Cary Police Corporal Armando Bake received Russell's report on 12 September 2019 at the Juvenile Crimes Unit. Corporal Bake spoke with Riley, her father, and her brother. Riley's brother identified the alleged perpetrator as "Ray-Ray," and he informed Corporal Bake "Ray-Ray" was currently in jail for an alleged robbery.

Riley told Corporal Bake that she and "Ray-Ray" had communicated *via* text messages and cellular phone calls. Riley also gave Corporal Bake her and "Ray-Ray's" cell phone numbers. Corporal Bake contacted Cary Police Detective Jim Young, who was investigating the alleged robbery. Detective Young identified "Ray-Ray" as

Defendant and also confirmed his date of birth and his cell phone number.

Corporal Bake and Detective John Schneider obtained a court order requesting Defendant's cell phone records from Verizon from May 2019 until July 2019. The officers used PenLink, a computer program, to create a derivative record showing communications between Defendant's and Riley's cellular phones. PenLink derived "over 100 communications . . . between the two phones" within the May to July 2019 time period.

Riley testified she and her brother used their apartment as a "crack house," bringing people over for "drugs and sex," while their father was away working. Riley initially met then thirty-two-year-old Defendant at a hotel through her brother. Riley later encountered Defendant outside near the family's apartment, while she was walking her dog during the summer of 2019. After "small talk," Defendant told Riley that he was waiting to meet her brother. Riley "offered to let [Defendant] wait in the house because it was hot outside."

Riley and Defendant talked, which "led to [Riley] doing a tarot card reading" for Defendant. Riley displayed a tarot card, which "had a naked lady on it," and which steered the conversation towards the topic of sex. Riley produced and showed Defendant her "pleasure toys." Riley asked Defendant if he wanted to have sex. Defendant agreed, and the two went into Riley's brother's bedroom and allegedly engaged in multiple acts of fellatio and intercourse.

Riley allegedly told her brother what had occurred when he arrived home a

short time later. Neither Riley nor her brother told their father or any other adult about the allegations until her visit at Duke, because she was "scared." Defendant received Riley's cell phone number from her brother and began to communicate with her.

Defendant was indicted for statutory rape of a person fifteen years or younger, statutory sexual offense with a child fifteen years or younger, and indecent liberties with a child.

During pre-trial proceedings on the day trial was scheduled to begin, Defendant's attorney stated: "Your honor, the defendant requests that I move to withdraw, so I move to withdraw." Defendant's attorney stated he had been representing Defendant for several years in multiple different cases. Defendant's attorney asserted this representation had begun cordially, but their relationship had become difficult after Defendant had "refused to talk to him." Defendant's attorney stated he had received all discovery materials and an offer of a plea agreement from the State, which he had forwarded to Defendant. Defendant's attorney stated he was familiar with the case and was fully prepared to try the case.

Defendant stated his counsel had not come to see him much and had "yelled" at him during a visit. Defendant disagreed with his counsel's trial strategy, specifically his counsel's refusal to challenge the indictment and to file a motion for discovery. Defendant acknowledged receipt of all materials provided by the State, including a plea offer and agreement.

The trial court denied Defendant's counsel's motion to withdraw, trial proceeded, and a jury convicted Defendant of all three charges. The trial court consolidated his convictions for statutory rape of a person fifteen years or younger and statutory sexual offense with a child fifteen years or younger and sentenced Defendant to an active sentence of 317 to 441 months imprisonment. Defendant was also sentenced to 21 to 35 months active imprisonment for the indecent liberties with a child conviction, the sentences to run consecutively. Defendant appeals.

## II.  Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2021).

## III.  Issues

Defendant argues the trial court erred by: (1) admitting phone records, which were hearsay and violated his rights under the Confrontation Clause, (2) admitting hearsay evidence to link him to a phone number; (3) allowing an in-court identification based on an impermissibly suggestive pretrial procedure; (4) denying his motion to have his attorney withdraw as counsel; and, (5) denying his motion for a new attorney.

## IV.  Confrontation Clause

Defendant asserts the admission of State's Exhibit #2 of the Verizon records showing calls made to and from cell number (984)-328-XXXX from 1 May 2019 to 13 July 2019 and State's Exhibit #3 showing calls to Defendant's purported cell number ending in 1545 and (984)-328-XXXX were inadmissible hearsay and violated his Sixth

Amendment right to confront and cross-examine witnesses and challenge the evidence admitted against him.

## A. Standard of Review

"A violation of the defendant's rights under the Constitution of the United States is prejudicial unless [the State proves] . . . it was harmless beyond a reasonable doubt." *State v. Lewis*, 361 N.C. 541, 549, 648 S.E.2d 824, 830 (2007) (citing N.C. Gen. Stat. § 15A-1443(b) (2005)). Whether a defendant's right to confrontation has been violated is reviewed *de novo*. *State v. Jackson*, 216 N.C. App. 238, 241, 717 S.E.2d 35, 38 (2011) (citation omitted).

"When the State fails to prove the error was harmless beyond a reasonable doubt, 'the violation is deemed prejudicial[,] and a new trial is required.'" *State v. Glenn*, 220 N.C. App. 23, 25, 725 S.E.2d 58, 61 (2012) (citation omitted).

## B. Analysis

### 1. Sixth Amendment Confrontation Clause

Defendant argues he suffered Constitutional and prejudicial error when the trial court admitted the hearsay cellular phone data records as direct evidence without any prior or in-court opportunity for him to confront and cross-examine the source and assertions. U. S. Const. amend VI.

The Supreme Court of the United States held: "The Sixth Amendment's Confrontation Clause provides that, [i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. We have held

that this bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42, 158 L.Ed.2d 177, 187 (2004) (citations and quotation marks omitted).

Justice Scalia cited a very early decision from the Court in North Carolina in support of the original meaning and understanding of the right of confrontation:

> Early state decisions shed light upon the original understanding of the common-law right. *State* v. *Webb*, 2 N.C. 103 (1794) (per curiam)*,* decided a mere three years after the adoption of the Sixth Amendment, held that depositions could be read against an accused only if they were taken in his presence. Rejecting a broader reading of the English authorities, the court held: "[I]t is a rule of the common law, founded on natural justice, that no man shall be prejudiced by evidence which he had not the liberty to cross examine." *Id.,* at 104.

*Crawford,* 541 U.S. at 49, 158 L. Ed. 2d at 191,

Justice Scalia also reasoned:

> Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of reliability. . . . Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation. To be sure, the Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee.

*Id.* at 42, 158 L.Ed.2d at 187 (internal quotation marks omitted).

Our Supreme Court more recently held the Sixth Amendment Confrontation Clause within the Constitution of the United States, and applicable to the states, bars admission of direct testimonial evidence, "unless the declarant is unavailable to

testify and the accused had a prior opportunity to cross-examine the declarant." *State v. Locklear*, 363 N.C. 438, 452, 681 S.E.2d 293, 304 (2009).

Courts employ a three-step inquiry to determine whether a defendant's right to confront a witness has been violated: (1) whether the evidence admitted was testimonial in nature; (2) whether the trial court properly ruled the declarant was unavailable; and, (3) whether defendant had an opportunity to cross-examine the declarant. *See State v. Clark*, 165 N.C. App. 279, 283, 598 S.E.2d 213, 217 (2004); *Crawford*, 541 U.S. at 68, 158 L.Ed.2d at 203.

The trial court made oral findings to support its ruling to admit State's Exhibit #2:

> The court does not find that it is admissible under the express terms of Rule 801 - - I'm sorry, 803(6). However, the court will accept the document under Rule 803(6) read in conjunction with Rule 803(24), the so-called catch-all exception to the hearsay rule under Rule 803, in that the document is not specifically covered by any of the foregoing exceptions under the rule, but does have equivalent circumstantial guarantees of trustworthiness, in that *the statement is offered as evidence of a material fact; it is more probative on the point for which it is offered than any other evidence which the proponent could procure through reasonable efforts;* and the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.
>
> The court, moreover, does find, and I believe there is no dispute as to this, that the proponent did give written notice stating its intention to offer this statement and the particulars of it, including the name and address of the declarant, to the adverse party sufficiently in advance of offering the statement to provide the adverse party with a

fair opportunity to prepare to meet the statement.
(emphasis supplied).

The trial court's findings answered the first and second factors and steps above in the affirmative and the third factor in the negative and these statements are testimonial. *Clark*, 165 N.C. App. at 283, 598 S.E.2d at 217; *Crawford*, 541 U.S. at 68, 158 L.Ed.2d at 203.

These findings contravene *Crawford's* admonition, "we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of reliability. . . . Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation." *Crawford*, 541 U.S. at 42, 158 L.Ed.2d at 187. *Crawford* forbids testimonial evidence not subject to confrontation, and the evidence should have been excluded. *Id.*

### 2.  Rule of Evidence 803(6)

The trial court erroneously admitted this evidence under a combination of hearsay rules, "under Rule 803(6) read in conjunction with Rule 803(24)."  Hearsay is a "statement *other than one made by the declarant while testifying at the trial* or hearing, offered in evidence *to prove the truth of the matter asserted*."  N.C. Gen. Stat. § 8C-1, Rule 801(c) (2021) (emphasis supplied).

The State initially attempted to admit State's Exhibits #2 and #3 solely as business records pursuant to Rule 803(6).  No official or agent from Verizon appeared in court to authenticate them, and the cover letter purporting to authenticate the

records were not sworn, under seal nor notarized, to qualify them as an affidavit, nor were any of these record subject to prior confrontation by Defendant. *Id.*

While Verizon's hearsay records, which are produced and kept in the ordinary course of business, may have been qualified a custodian and sought admission as non-testimonial ordinary course of business records, the State failed to authenticate them to justify admission under that specific exception. *Id.*; *State v. Smith*, 315 N.C. 76, 93, 337 S.E.2d 833, 844 (1985). The trial court correctly concluded, "[t]he court does not find that it is admissible under the express terms of Rule 801 - - I'm sorry, 803(6)." N.C. Gen. Stat. § 8C-1, Rule 803(6) (2021),

State's Exhibit # 3 was also inadmissible as a business record after Detective Schneider testified the document was expressly made for the purpose of litigation and not produced or retained in the regular course of Verizon's business. *Id.* The documents were compiled, derived, and presented for the upcoming litigation, and the Exhibits were not compiled nor maintained in the regular course of Verizon's business nor presented by a qualified custodian. N.C. Gen. Stat. § 8C-1, Rule 803(6).

No one was present at trial with knowledge or authority to validate or testify to and to be subject to cross-examination concerning their maintenance, retention, compilation, chain of custody, or authenticity. *Id.* The trial court, after objection, correctly denied their admission as business records, given as the trial court properly found, "the statement is offered as evidence of a material fact." *Id.*

### 3. *Rule of Evidence 803(24) Catch all*

The trial court then erroneously admitted both the challenged documents and exhibits over objection "under rule 803(6) read in conjunction with Rule 803(24), the so-called catch-all exception." Rule 803(24) governs the admission of a hearsay statement, as a "catch all", which is not covered by another exception, but the evidence carries sufficient *indicia* of reliability. The residual or "catch all" exception to the rule against the admission of hearsay statements is codified by N.C. Gen. Stat. § 8C-1, Rule 803(24) (2021).

The residual hearsay exception allows the admission of:

> [a] *statement not specifically covered by any of the foregoing exceptions* but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. *However, a statement may not be admitted under this exception unless the proponent of it gives written notice stating his intention to offer the statement and the particulars of it, including the name and address of the declarant, to the adverse party sufficiently in advance of offering the statement to provide the adverse party with a fair opportunity to prepare to meet the statement.*

*Id.* (emphasis supplied).

In order for hearsay statements to be admissible under Rule 803(24), our Supreme Court, in a pre-*Crawford* opinion, held the trial court must also determine and conjunctively find:

- 11 -

(1) whether proper notice has been given, (2) whether the hearsay is not specifically covered elsewhere, (3) whether the statement is trustworthy, (4) whether the statement is material, (5) whether the statement is more probative on the issue than any other evidence which the proponent can procure through reasonable efforts, *and* (6) whether the interests of justice will be best served by admission.

*State v. Valentine*, 357 N.C. 512, 518, 591 S.E.2d 846, 852 (2003) (citations omitted) (emphasis supplied). *See Crawford*, 541 U.S. at 42, 158 L.Ed.2d at 187.

The trial court is also mandated to "make adequate findings of fact and conclusions of law sufficient to allow a reviewing court to determine whether the trial court [erred] in making its ruling." *State v. Sargeant*, 365 N.C. 58, 65, 707 S.E.2d 192, 196 (2011) (citation omitted). "If the trial court either fails to make findings or makes erroneous findings, we review the record in its entirety to determine whether that record supports the trial court's conclusion concerning the admissibility of a statement under a residual hearsay exception." *Id.* (citation omitted).

As noted, the trial court made findings purporting to support its ruling to admit State's Exhibit #2:

The court does not find that it is admissible under the express terms of Rule 801 - - I'm sorry, 803(6). However, the court will accept the document under Rule 803(6) read in conjunction with Rule 803(24), the so-called catch-all exception to the hearsay rule under Rule 803, in that the document is not specifically covered by any of the foregoing exceptions under the rule, but does have equivalent circumstantial guarantees of trustworthiness, in that the statement is offered as evidence of a material fact; it is more probative on the point for which it is offered than any other evidence which the proponent could procure through

reasonable efforts; and the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

The court, moreover, does find, and I believe there is no dispute as to this, that the proponent did give written notice stating its intention to offer this statement and the particulars of it, including the name and address of the declarant, to the adverse party sufficiently in advance of offering the statement to provide the adverse party with a fair opportunity to prepare to meet the statement.

When the State sought to introduce their Exhibit #3 at trial, Defendant renewed and objected on the same grounds as previously asserted, and the trial court again overruled Defendant's objection.

The primary purpose of the court-ordered production of and preparation of the data records retained and provided by Verizon was to prepare direct testimonial evidence for Defendant's trial. The trial court specifically found "the statement is offered as evidence of a material fact." Exhibits #2 and #3 were offered and admitted for consideration by the jury as substantive and testimonial evidence. Defendant was not given the prior opportunity or at trial to challenge or cross-examine officials from Verizon, who had purportedly accumulated this evidence, and their admission as such violated Defendant's rights under the Confrontation Clause. U. S. Const. amend VI. *Crawford*, 541 U.S. at 42, 158 L.Ed.2d at 187; *State* v. *Webb*, 2 N.C. 103, 104 (1794) (per curiam) ("no man shall be prejudiced by evidence which he had not the liberty to cross-examine").

### 4. *Harmless Error*

The State recognizes the potential Confrontation error and argues their erroneous admission was "harmless beyond a reasonable doubt." *Lewis*, 361 N.C. at 549, 648 S.E.2d at 830 (citation omitted). The trial court found the phone records were direct evidence of the State's case and submitted them to the jury. Without these records, and in the absence of other physical or corroborative evidence, the State's case relies solely upon Riley's allegations and testimony. Without these records, the jury was left to adjudicate Defendant's guilt solely upon Riley's credibility.

The State has failed to carry its burden to prove the erroneous admission of the hearsay phone records in violation of the Confrontation Clause was "harmless beyond a reasonable doubt." *Id.* (citation omitted). The purported cellular phone contacts between Defendant and Riley after the alleged assaults gave corroboration and credibility to her testimony. No other physical or direct evidence was admitted to support the State's case.

The State cannot demonstrate, absent the cellular phone data hearsay or without other physical or direct evidence, the jury would have found Riley's allegations as credible to reach its verdicts to meet and carry its burdens to demonstrate the Constitutional error was "harmless beyond a reasonable doubt." *Id.*

## V.    Conclusion

This challenged evidence was testimonial, and the trial court correctly ruled they did not quality to be admitted as business records. The State failed to carry its

burden to demonstrate the error in the admission of the admittedly hearsay cell phone records in State's Exhibits #2 and #3 was "harmless beyond a reasonable doubt." *Id.*

We reverse the trial court's rulings on Defendant's motions, vacate the trial court's judgment entered on Defendant's convictions for statutory rape of a person fifteen years or younger, statutory sexual offense with a child fifteen years or younger, and indecent liberties with a child, and remand for a new trial.

In light of our disposition on these issues, we need not address Defendant's remaining arguments. *It is so ordered.*

NEW TRIAL.

Judges COLLINS and WOOD concur.